UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 605 FIFTH PROPERTY OWNER, LLC,<br><br>      Plaintiff,<br><br>- against -<br><br>ABASIC, S.L.,<br><br>      Defendant. | Civil Action No.:<br><br>**COMPLAINT WITHOUT<br>JURY DEMAND** |

605 Fifth Property Owner, LLC, by and through its attorneys, Belkin Burden Goldman, LLP, for its Complaint against Abasic, S.L., alleges as follows:

**NATURE OF CLAIMS**

1. This action arises out of a breach of a certain commercial guaranty agreement dated as of January 17, 2020 (the "Guaranty"), made by Defendant, Abasic, S.L. ("Defendant"), in favor of Plaintiff, 605 Fifth Property Owner, LLC ("Plaintiff"). Pursuant to the Guaranty, Defendant guaranteed the obligations of its wholly-owned subsidiary, NTS W. USA Corp. ("Tenant"), under that certain commercial Store Lease dated as of January 17, 2020 (the "Lease"), between Plaintiff and Tenant.

2. There is no dispute that Plaintiff and Tenant entered into the Lease whereby Tenant was obligated to pay Plaintiff for its use of a commercial premises. It is also undisputed that under the express terms of the Guaranty, Defendant unconditionally and irrevocably guaranteed Tenant's prompt and complete payment, observance, fulfillment, and performance of all of Tenant's obligations under the Lease.

3. Due to (i) Tenant's and Defendant's ongoing breaches of their obligations under the Lease and Guaranty by their failure to fully and promptly tender to Plaintiff the

base rent and additional rent which have come due and owing, and (ii) Tenant's bankruptcy proceeding filed in the in the United States Bankruptcy Court for the Southern District of New York, under Case No. 20-35769 (CGM), and that certain order docketed on October 7, 2020, under which Tenant was authorized to reject the Lease as of September 4, 2020 (the "Lease Rejection Order"), Plaintiff respectfully requests judgment in its favor for all base rent and additional rent due and payable, which presently totals $551,609.85, plus accrued interest, and such other and further rent charges that become due hereafter.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1), because the amounts in controversy exceed $75,000, exclusive of interest and costs, and is between citizens of different states. Defendant has also expressly consented to this Court's jurisdiction over the subject matter pursuant to Section 14 of the Guaranty.

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this district. Venue is also proper pursuant to Section 14 of the Guaranty, which provides that, in any proceeding arising out of or in connection with the Guaranty, venue is proper in a federal court located in the State of New York.

## THE PARTIES

6. At all relevant times set forth herein, Plaintiff was and is a New York limited liability company, authorized to conduct business in the State of New York, with an

address at c/o Optimum Properties, 924 Bergen Avenue, Suite 513, Jersey City, New Jersey 07306, and subject to personal jurisdiction in the State of New York.

7. Upon information and belief, at all relevant times set forth herein, Defendant was and is a company registered under the laws of the Kingdom of Spain with a registration number B63054068 and a registered office of Passeig Del Mare Nostrum 15, 08039, Barcelona, Spain.

## FACTS COMMON TO ALL CAUSES OF ACTION

8. Plaintiff is the owner of the real property and building known as and located at 605 Fifth Avenue, New York, New York 10017 (the "Building").

9. Tenant was the commercial tenant under the terms of the Lease for portions of the ground floor, second floor and cellar level of the Building (collectively the "Premises"), until the Lease Rejection Order was entered effective as of September 4, 2020.  Tenant is no longer in possession of the Premises.

10. Possession of the Premises was delivered to Tenant on April 1, 2020, pursuant to the terms of the Lease.

11. Pursuant to the Lease, Tenant was permitted to use and occupy the Premises as a general retail space for the sale and display of men's, women's and children's apparel, footwear, accessories, handbags, and other related goods, for a term of three (3) years, commencing April 1, 2020 (the "Commencement Date"), through and including March 31, 2023 (the "Expiration Date").

12. As an inducement for the execution of the Lease by Plaintiff, Defendant executed the Guaranty, whereby Defendant unconditionally and irrevocably guaranteed

Tenant's prompt and complete payment, observance, fulfillment, and performance of all of Tenant's obligations under the Lease

**THE RELEVANT PROVISIONS OF THE LEASE AND GUARANTY**

13. Pursuant to various provisions of the Lease and Guaranty, Defendant has an absolute and unconditional obligation to pay to Plaintiff the base rent and additional rent due and owing under the terms of the Lease, without any offset, abatement or deduction whatsoever.

14. Pursuant to the terms of Section 1.04(A) of the Lease, the Lease required Tenant to pay base rent for the Premises, for the period commencing April 1, 2020, through and including January 31, 2021.

15. Under the rent schedule set forth in Section 1.01(H) of the Lease (the "Rent Schedule"), Tenant was obligated to pay base rent for the Premises in the amount of $116,666.67 per month, for the period covering of April 1, 2020 through January 31, 2021.

16. In addition to the base rent, Tenant was liable for certain operating expense payments, percentage rent, tax payments, administrative service charges, refunds of free rent, late charges, and attorneys' fees, billed as additional rental charges pursuant to Section 1.01(XX), Section 1.05(H), Section 3.01(A), Section 3.01(B), Section 8.02(E), Section 10.01, Section 10.02 and Section 10.25 of the Lease.

17. Tenant was obligated to pay for operating expenses pursuant to Section 1.01(XX) of the Lease, which defines such operating expenses as:

> "(i) the sum of all costs and expenses (and all taxes thereon, if any) paid or incurred by Landlord (or on behalf of Landlord) with respect to repairs and maintenance of the elevator at the Property, and water charges and sewer rents for the Property; and (ii) if Tenant has not timely provided the Second Floor Premises Deletion Notice, an amount equal to Two Thousand

4

Five Hundred Dollars ($2,500) per month during the 1st Lease Year, which amount shall be increased by three percent (3%) for each Lease Year thereafter (e.g., Two Thousand Five Hundred Seventy-Five Dollars ($2,575) per month during the 2nd Lease Year and Two Thousand Six Hundred Fifty-Three Dollars ($2,653) per month during the 3rd Lease Year)".

18. Tenant was also obligated to pay a percentage of the annual base rent during the period in which it does not conduct business at the Premises pursuant to Section 1.05(H) of the Lease:

"Without limiting anything contained in Section 4.02 and notwithstanding anything to the contrary, during any period that Tenant is not conducting business in the Premises (other than for a Temporary Cessation), Percentage Rent shall be payable to Landlord by Tenant during the period that Tenant is not conducting business in the Premises in an amount equal to fifteen percent (15%) of the Base Rent payable during such period".

19. Tenant was also required to pay its proportionate share of the taxes over the base year pursuant to Section 3.01(A) of the Lease, which sets forth:

"If Taxes payable for any Tax Year (including the Tax Year in which the Commencement Date occurs) shall exceed the Base Tax Amount, Tenant shall pay Landlord, as Additional Rent, for such Tax Year an amount (the "Tax Payment") equal to Tenant's Proportionate Share of the amount by which the Taxes for such Tax Year exceed the Base Tax Amount".

20. Tenant was further required to pay an advance against the next installment of taxes pursuant to Section 3.01(B) of the Lease, which sets forth in relevant part:

"Tenant shall pay Landlord on the first day of each month during the Tax Year in which the Tax Payment will be due, an amount equal to one-twelfth (1/12) of Landlord's estimate of the Tax Payment for such Tax Year".

5

21. Pursuant to Section 8.02(E) of the Lease, upon the occurrence of any event of default by Tenant, Tenant is required to immediately pay to Landlord the Base Rent for the Free Base Rental Period:

> "Landlord and Tenant further acknowledge that, to induce Tenant to enter into this Lease, and in consideration of Tenant's agreement to perform all of the terms, covenants and conditions to be performed by Tenant under this Lease, as and when performance is due during the Term, Landlord has agreed to waive payment by Tenant of Base Rent or portions thereof during the Free Base Rental Period. Upon the occurrence of an Event of Default, the foregoing waiver of payment of Base Rent or portions thereof shall be of no further force and effect as to any subsequent payments of Base Rent otherwise due under this Lease, each of the foregoing waivers shall be deemed revoked retroactively and Tenant shall immediately pay too Landlord as Additional Rent any and all payments of Base Rent which have theretofore been waived".

22. Pursuant to Section 10.01 of the Lease, Tenant was also obligated to pay an administrative service charge if Tenant failed to timely pay the amounts owed by it under the Lease:

> "Tenant acknowledges that any failure by it to timely pay any of its obligations hereunder will result in and cause monetary loss to Landlord beyond the amount unpaid by Tenant, the exact amount of such costs being extremely difficult and impracticable to fix. Such costs include, without limitation, processing and accounting charges and late charges that may be imposed on Landlord by the terms of any encumbrance covering the Premises. Therefore, in addition to any other rights and remedies provided Landlord, any and all payments, whether for rentals due or other charges, adjustments or assessments, which remain unpaid for five (5) days after the respective due date, will be subject to an administrative service charge of five percent (5%) of the total overdue amount".

23. Pursuant to Section 10.02 of the Lease, Tenant was also obligated to pay a late charge if Tenant failed to timely pay the amounts owed by it under the Lease:

> "In addition to the administrative service charge described in Section 10.01 and all other rights and remedies provided Landlord, all amounts payable hereunder which remain unpaid for five (5) days after their respective due dates shall bear interest from the date that the same became due and payable to and including the date of payment, whether or not demand is made therefor, at the lesser of (i) the rate of eighteen percent (18%) per annum or (ii) the maximum legal interest rate allowed by the State of New York".

24. Tenant is also obligated to pay for Plaintiff's attorneys' fees, pursuant to Section 10.25 of the Lease:

> "Without limiting anything contained herein, Tenant shall reimburse Landlord for all reasonable fees, costs and expenses arising out of (i) Landlord's enforcement of this Lease, (ii) a default under this Lease by Tenant where Landlord places the enforcement thereof in the hands of an attorney (including, without limitation, for the collection of any Rent due or to become due or the recovery of possession of the Premises); or (iii) unless Tenant is the prevailing party, any litigation (including without limitation, court costs and the reasonable fees and disbursements of its attorneys in such action or proceeding (whether at the administrative, trial or appellate levels), negotiation or transaction in which Tenant caused Landlord to be involved or concerned, in either even regardless of whether or not a proceeding or suit is actually filed or commenced".

25. Pursuant to the Section 2 of the Guaranty, unconditionally and irrevocably guaranteed Tenant's prompt and complete payment, observance, fulfillment, and performance of all of Tenant's obligations under the Lease.

26. Defendant's liability under the Guaranty is primary, and not secondary, and pursuant to Section 3 of the Guaranty, Defendant shall be liable for the full amount of all of the obligations of Tenant under the Lease, including any interest, costs, and fees (including Legal Costs (as defined in the Guaranty) payable by Tenant under the Lease,

7

including any amounts which would have accrued under the Lease but for any insolvency proceeding.

27. Pursuant to Section 5 of the Guaranty, Guarantor's liability under the Guaranty is not affected, limited or terminated even if Tenant ceases to be liable under the Lease, whether by insolvency proceedings or otherwise, and Guarantor waived the right to claim or raise or assert any defense, counterclaim, set-off or deduction against the obligations of Tenant under the Lease that would or might be available to Tenant, other than actual payment and performance of all of such obligations in full.

### DEFENDANT'S BREACH OF THE GUARANTY AND LIABILITY FOR BASE RENT AND ADDITIONAL RENT

28. Pursuant to the express terms and conditions of the Lease, Tenant agreed, throughout the term of the Lease, to timely pay to Plaintiff, on the first day of each month, the full amount of the base rent and additional rent due and owing under the Lease and, pursuant to the Guaranty, Defendant unconditionally and irrevocably guaranteed Tenant's prompt and complete payment, observance, fulfillment, and performance of such obligation as well as all of Tenant's other obligations under the Lease.

29. In breach of Tenant's obligations under the Lease and Defendant's obligations under the Guaranty, Defendant has failed to tender to Plaintiff the base rent and additional rent which have presently come due and owing under the Lease and Guaranty.

30. Defendant has failed to pay, and is therefore liable for the following amounts of fixed annual base rent and additional rent which have come due and owing to Plaintiff, covering the period of May 1, 2020, through and including January 31, 2021: (i)

$1,050,000.02 in fixed annual base rent; (ii) $28,497.03 in operating expenses; (iii) $106,167.65 in additional rent in lieu of percentage rent; (iv) $25,841.03 in its proportionate share of tax payments; (v) $26,267.14 in administrative service charges; and (vi) $57,466.98 in attorneys' fees, totaling $1,294,239.85 in annual base rent and additional rent due and owing through January 31, 2021. Defendant is also liable for certain late charges, which continue to accrue, and will be sought.

31. Based upon such rental defaults, and in accordance with Plaintiff's rights and remedies under the Lease, on or about October 30, 2020, Plaintiff exercised its right draw on the entire amount of the security deposit posted by Tenant in the amount of $742,630.

32. Thus, upon application of the security deposit in the amount of $742,630, Defendant owes $551,609.85 to Plaintiff in base rent and additional rent under the Lease and Guaranty through and including January 31, 2021.

33. As of the date hereof, the Premises have not been re-let to a new tenant. Plaintiff is under no obligation, whether pursuant to the Lease or applicable laws, to mitigate Defendant's damages.

**FIRST CLAIM FOR RELIEF**
**(Breach of Guaranty Agreement)**

34. Plaintiff repeats and re-alleges all of the above allegations with the same force and effect as if fully set forth below.

35. At all relevant times herein, Plaintiff, as landlord, and Tenant, as tenant, were parties to the Lease.

36. Defendant, as the guarantor of Tenant's Lease obligations, made the Guaranty in favor of Landlord.

9

37. Plaintiff has complied with its obligations under the Lease and Guaranty, and has fully and faithfully performed all duties and obligations required under the Lease and Guaranty.

38. Pursuant to the terms of the Guaranty, Defendant unconditionally and irrevocably guaranteed Tenant's prompt and complete payment, observance, fulfillment, and performance of all of Tenant's obligations under the Lease.

39. In breach of the Defendant's obligations under the Guaranty, Defendant has failed to pay to Plaintiff the base rent due and owing under the Guaranty, for the period of time covering May 1, 2020, through and including January 31, 2021, in the amount of $1,050,000.02.

40. In breach of the Defendant's obligations under the Guaranty, Defendant has further failed to pay to Plaintiff the additional rent due and owing under the Guaranty, for the period of time covering April 1, 2020, through and including January 31, 2021, in the amount of $244,239.83.

41. After applying the security deposit in the amount of $742,630, Defendant owes $551,609.85 through January 31, 2021.

42. Based upon the foregoing, and subject to Plaintiff's rights to amend its pleading to conform it to the proofs to account for all subsequently accruing rent and additional rent incurred under the Guaranty, all of which are expressly reserved, Plaintiff is entitled to the issuance and entry of a monetary judgment, in its favor and against Defendant, in the amount of $551,609.85 plus statutory interest, costs, and disbursements.

## **SECOND CLAIM FOR RELIEF**
**(Attorneys' Fees)**

43. Plaintiff repeats and re-alleges all of the above allegations with the same force and effect as if fully set forth below.

44. Pursuant to Section 10.25 of the Lease, Tenant was liable to Landlord for the payment of all attorneys' fees and expenses incurred by Plaintiff as a result of Tenant's failure to comply with the express terms and conditions of the Lease.

45. Pursuant to Section 3 of the Guaranty, Defendant is liable to Plaintiff for the payment of all costs and expenses, including attorneys' fees incurred by Plaintiff as a result of Tenant's failure to comply with the terms and conditions of the Lease, including any of such costs, expenses and attorneys' fees that would have accrued under the Lease but for Tenant's insolvency proceeding.

46. Pursuant to Section 16 of the Guaranty, Defendant is liable to Plaintiff for the payment of all costs and expenses, including attorneys' fees incurred by Plaintiff in this case to enforce Defendant's obligations under the Guaranty.

47. Plaintiff has commenced this action against Defendant in order to enforce its rights and remedies under the Guaranty, including, but not limited to, its right to receive and recover all base rent and additional due and owing under the Lease, and Plaintiff's costs and expenses, including attorneys' fees incurred by Plaintiff in this case to enforce Defendant's payment obligations under the Guaranty.

48. Plaintiff anticipates that it will be the prevailing party in this action.

49. Plaintiff has incurred, and will continue to incur, attorneys' fees and other expenses in connection with the commencement and prosecution of this action.

50.     Therefore, Defendant is liable to Plaintiff for attorneys' fees, in an amount to be determined by the Court, but in an amount no less than $25,000.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that the Court grant judgment against Defendant as follows:

a.  On The First Claim For Relief, granting Plaintiff a money judgment against Defendant in the sum of $551,609.85, with interest, subject to Plaintiff's right to seek additional damages for all rent, additional rent and other charges due and owing under the Lease through and including the date of judgment;

b.  On the Second Claim For Relief, granting Plaintiff a money judgment for Plaintiff's costs and expenses, including attorneys' fees against Defendant in the sum of at least $25,000, with interest; and

c.  Granting Plaintiff such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        January 19, 2021

BELKIN BURDEN GOLDMAN, LLP
*Attorneys for Plaintiff*
605 Fifth Property Owner, LLC
270 Madison Avenue
New York, New York 10016
(212) 867-4466

By: *Jay B. Solomon*
    Jay B. Solomon, Esq.