UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
605 FIFTH PROPERTY OWNER, LLC,       :
                                     :
                     Plaintiff,      :        21cv811 (DLC)
                                     :
          -v-                        :        OPINION AND ORDER
                                     :
ABASIC, S.A.                         :
                                     :
                     Defendant.      :
                                     :
------------------------------------ X

APPEARANCES:

For plaintiff:
Jay B. Solomon
Belkin Burden Goldman, LLP
1 Grand Central Plaza
60 E. 42nd Street
Ste 16th Floor
New York, NY 10165

For defendant:
Eric Roman
Devon Austin Rettew
Arent Fox LLP (NY)
1301 Avenue of the Americas
Ste Floor 42
New York, NY 10019

James H. Hulme
Arent Fox LLP
1717 K Street NW
Washington, DC 20036


DENISE COTE, District Judge:

     605 Fifth Avenue Property Owner, LLC ("Owner") has sued

Abasic, S.A. ("Abasic") to enforce a guarantee on a commercial

1

lease held by Abasic's subsidiary ("Guarantee").   The parties
have submitted cross motions for summary judgment on the
defendant's affirmative defense that the plaintiff's claims were
released in bankruptcy.   The plaintiff has also submitted a
motion to amend its complaint to allege damages for rent accrued
during litigation, and for summary judgment on its claims and on
the defendant's remaining defenses.   For the following reasons,
the defendant's motion is denied, and the plaintiff's motions
are granted.   The Guarantee is enforced.

## Background

     The following facts are taken from the parties'
submissions, and are undisputed unless otherwise stated.   Owner
is a New York limited liability company, with members in Florida
and New York.   Owner is the landlord of a building on 605 Fifth
Avenue.   On January 17, 2020, Owner leased the property for
three years to NTS W. USA Corp. ("NTS").   NTS is a wholly owned
subsidiary of Abasic, a Spanish company with its headquarters in
Spain.   Abasic signed the Guarantee with Owner, in which it
agreed to guarantee NTS's obligations under the lease.

     Owner made the premises available to NTS on April 1, 2020.
NTS originally intended to renovate the premises in order to
open a retail store.   Unfortunately, however, NTS's plans
coincided with the COVID-19 pandemic.   In late March, New York's

governor issued executive orders locking down businesses, including non-essential construction work.  N.Y. Executive Order 202.6.  By May of 2020, NTS had stopped reporting any progress on its renovation efforts.

NTS filed for bankruptcy in the Southern District of New York on July 22, 2020.  In re NTS W. USA Corp., No. 20-bk-35769. During the bankruptcy proceedings, NTS rejected the lease.[1]  NTS also initiated an adversary proceeding against Owner seeking to avoid its obligations under the lease.  NTS W. USA Corp. v. 605 Fifth Property Owner, LLC, No. 20-ap-9035.  Among other arguments, NTS claimed that the lease was no longer enforceable due to impossibility or frustration of purpose.  The bankruptcy court ruled against NTS in the adversary proceeding, and its ruling was affirmed by the District Court.  See In re NTS W. USA Corp., No. 20-cv-6692 (S.D.N.Y. Sept. 9, 2021).  That decision is currently on appeal before the Second Circuit.  In re NTS W. USA Corp., No. 21-2240.

On November 25, 2020, the bankruptcy court approved NTS's Chapter 11 Plan of Reorganization (the "Plan").  Relevant here,

---

[1] A rejection of a contract in bankruptcy constitutes a breach of the contract effective immediately before the filing of the bankruptcy petition.  Mission Prod. Holdings, Inc. v. Tempnology, LLC, 139 S. Ct. 1652, 1661 (2019) (citing 11 U.S.C. § 365(g)).

article VIII.E of the Plan contained a provision in which NTS's creditors released NTS and its "affiliates" from liability. Meanwhile, Owner took other measures to recoup its losses. Owner applied NTS's security deposit of $742,630 to the lease. It has also since rented the property to several other tenants, albeit for shorter periods and lower rent than in the agreement with NTS.

Owner filed this action against Abasic on February 1, 2021, asserting claims for breach of the Guarantee and attorney's fees. On October 29, 2021, Abasic filed a motion for summary judgment, seeking to dismiss Owner's claims as barred by the bankruptcy release. Owner opposed Abasic's motion, and submitted a cross motion for summary judgment on Abasic's release defense, on November 12. Abasic's motion became fully submitted on November 19. Abasic then opposed Owner's cross motion on November 26. The cross motion for summary judgment became fully submitted on December 2. Finally, on January 21, 2022, Owner submitted a motion to amend its complaint to allege damages for rent accrued during litigation, and for summary judgment on both of its claims and Abasic's remaining defenses. Abasic opposed the motion on February 11. The motion became fully submitted on February 28.

## Discussion

I.  Amendment

Owner moves to amend the complaint to allege additional
damages for unpaid rent accrued since the complaint was filed.
"The decision of whether to allow such an amendment is left to
the discretion of the district court judge." Vermont Plastics,
Inc. v. Brine, Inc., 79 F.3d 272, 279 (2d Cir. 1996).  Amendment
is inappropriate, however, when it would prejudice the other
party.  Gussack Realty Co. v. Xerox Corp., 224 F.3d 85, 94 (2d
Cir. 2000).

Here, Owner seeks to amend only to allege damages for rent
that has become payable since the complaint was filed.  This
litigation has put Abasic on notice that Owner is seeking to
hold it liable for rent under the Guarantee, and Abasic provides
no argument that this amendment would prejudice it.
Accordingly, the complaint is deemed amended to allege
$2,213,009.82 in damages for unpaid rent.

II.  Liability

Summary judgment may only be granted when "the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  "To present a genuine issue of material fact
sufficient to defeat a motion for summary judgment, the record

5

must contain contradictory evidence such that a reasonable jury could return a verdict for the nonmoving party." _Horror Inc. v. Miller_, 15 F.4th 232, 241 (2d Cir. 2021) (citation omitted). Material facts are those facts that "might affect the outcome of the suit under the governing law." _Choi v. Tower Rsch. Cap. LLC_, 2 F.4th 10, 16 (2d Cir. 2021) (citation omitted).  In considering a motion for summary judgment, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." _Kee v. City of New York_, 12 F.4th 150, 158 (2d Cir. 2021) (citation omitted).

"Under New York law, if a contract is straightforward and unambiguous, its interpretation presents a question of law." _Spinelli v. Nat'l Football League_, 903 F.3d 185, 200 (2d Cir. 2018) (citation omitted).[2]  Summary judgment may therefore be appropriate when "the intent of the parties can be ascertained from the face of their agreement." _Postlewaite v. McGraw-Hill, Inc._, 411 F.3d 63, 67 (2d Cir. 2005) (citation omitted).  For a creditor to enforce a guarantee, "all that creditor need prove is absolute and unconditional guaranty, underlying debt, and the

---

[2] The Guarantee contains a New York choice-of-law provision.  New York law therefore applies to the parties' claims and defenses. _See Hartford Fire Ins. Co. v. Orient Overseas Container Lines (UK) Ltd._, 230 F.3d 549, 556 (2d Cir. 2000).

guarantor's failure to perform under the guaranty."  <u>City of New</u>
<u>York v. Clarose Cinema Corp.</u>, 681 N.Y.S.2d 251, 252 (1st Dep't
1998).

Owner has met its burden on summary judgment to enforce the
Guarantee.  Under the Guarantee, Abasic agreed to guarantee "the
full amount of all" of NTS's obligations under the lease,
"including any interest, costs, and fees (including Legal
Costs)."  The Guarantee explains that this obligation is
"continuing, absolute, and unconditional."  And Abasic does not
contest that NTS rejected the lease or that Abasic has made no
payments pursuant to its Guarantee.

Abasic instead puts forward various defenses from liability
under the Guarantee.  Owner argues that these defenses need not
even be considered in this action, because they were already
rejected in the adversary proceeding between NTS and Owner, and
because the Guarantee waives any right to raise defenses to
liability.  It is correct.  Under New York law, an unconditional
guarantee precludes any defense "personal" to the principal
"unless it extends to a failure of consideration for the
principal contract."  <u>Moon 170 Mercer, Inc. v. Vella</u>, 95
N.Y.S.3d 27, 27 (1st Dep't 2019) (citation omitted).  Even if it
were appropriate to consider Abasic's defenses, however, those
defenses would fail on the merits for the following reasons.

A.   Release

Abasic and Owner have submitted cross motions for summary judgment on Abasic's affirmative defense that its liability for the Guarantee was released under the reorganization plan approved in NTS's bankruptcy proceedings.  A confirmation order of a reorganization plan in a Chapter 11 bankruptcy "discharges the debtor from all pre-confirmation claims."  In re Kalikow, 602 F.3d 82, 94 (2d Cir. 2010) (citing 11 U.S.C § 1141(a)). Normally, a reorganization plan binds "the debtor and any creditor."  Id. (citation omitted).  In "rare cases," however, a reorganization plan may also release claims against nondebtors. In re Metromedia Fiber Network, 416 F.3d 136, 141 (2d Cir. 2005).

Here, the Plan releases claims against "the Debtor, Reorganized Debtor, the Estate and each of their affiliates, current and former offices, directors, principals, members, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents, and other representatives" (emphasis added) arising out of or relating to NTS.  Abasic argues that, as a parent company of NTS, it is also an "affiliate" within the meaning of the Plan, and has therefore been released from its obligations under the Guarantee.

The Plan does not release claims against Abasic that arise from the Guarantee.  The release provision refers to "officers, directors, principals," and other entities who might otherwise have derivative or vicarious liability for claims released under the Plan.  Abasic's obligations under the Guarantee, however, are not derivative of NTS's obligations under the lease.  As the Guarantee makes clear, Abasic's liability is "primary and not secondary," and persists regardless of whether NTS has a defense to liability under the lease.

Abasic points to the bankruptcy code's definition of the term "affiliate," which includes entities that control at least 20% of the debtor's outstanding voting securities.  11 U.S.C. § 101(2)(A).  Whether or not Abasic is an affiliate for purposes of the bankruptcy code or the Plan, however, is irrelevant.  Again, Abasic's role as an affiliate is separate from its role as a guarantor.  In any event, the Plan states that "[a]ny capitalized term used in the Plan . . . shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules."  But the term "affiliates" in the release provision is not capitalized, and other definitions of the term "affiliate" distinguish between affiliates and parent companies.[3]

---

[3] See, e.g., Affiliate, Investopedia (Oct. 31, 2021), https://www.investopedia.com/terms/a/affiliate.asp (defining an

Additionally, the Plan refers to Abasic as "the Parent" in several other provisions.  When the Plan wants to refer to Abasic, it therefore knows how to do so expressly.

Moreover, Abasic's construction of the release provision would lead to extreme results.  Under the release, all creditors of NTS must release NTS and its "<u>affiliates</u> . . . from any claims . . . in any manner arising from . . . the Debtor <u>or its affiliates</u>."  If the term "affiliates" is read to refer to Abasic, then the Plan would not just release NTS's creditors' claims against Abasic to the extent those claims relate to NTS. It would release <u>any claim</u> that any creditor of NTS had against Abasic, regardless of whether that claim had anything to do with NTS.

Abasic does not explain why the Plan should be read to extinguish all of its obligations to anyone who happened to do business with its American subsidiary -- the organization that actually declared bankruptcy.  Nor has it explained why this is one of the "rare cases" in which a nondebtor release would be essential to the reorganization plan.  <u>In re Metromedia Fiber Network, Inc.</u>, 416 F.3d at 141.  Accordingly, Owner is entitled

---

affiliate as "a business relationship where one company owns less than a majority stake in the other company's stock.").

to summary judgment on Abasic's defense that its obligations under the Guarantee were released in bankruptcy.[4]

B.   Frustration of Purpose and Impossibility

Owner moves for summary judgment on Abasic's affirmative defenses that its obligations under the Guarantee are excused by impossibility and frustration of purpose.  The doctrine of frustration of purpose applies "when a change in circumstances makes one party's performance virtually worthless to the other, frustrating his purpose in making the contract."  A/R Retail LLC v. Hugo Boss retail, Inc., 149 N.Y.S.3d 808, 821 (1st Dep't 2021) (quoting Restatement (Second) of Contracts § 265, Comment a).  "[T]o invoke the doctrine of frustration of purpose, the frustrated purpose must be so completely the basis of the contract that, as both parties understood, without it, the transaction would have made little sense."  Id. (citation omitted).

The defense of impossibility "excuses a party's performance only when the subject matter of the contract or the means of performance makes performance objectively impossible."  Utica Mut. Ins. Co. v. Clearwater Ins. Co., 906 F.3d 12, 22 (2d Cir.

---

[4] Because the Plan does not release Abasic from its obligations under the Guarantee, the parties' arguments regarding the enforceability of the Plan need not be addressed.

2018) (New York law) (citation omitted).  "[W]here impossibility or difficulty of performance is occasioned only by financial difficulty or economic hardship, even to the extent of insolvency or bankruptcy, performance of a contract is not excused."  407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp., 23 N.Y.2d 275, 281 (1968).

Abasic argues that the COVID-19 pandemic, and the government's response to it, have frustrated the purpose of the agreement with Owner, because consumer demand at its storefront has fallen so sharply as to make its business economically infeasible.  The disruption caused by the COVID-19 pandemic, however, is not sufficient to totally frustrate the purpose of the lease, much less the Guarantee.  Abasic can still attempt to operate a retail establishment on Fifth Avenue, as many businesses continue to do, even if it is unprofitable.  New York courts have therefore overwhelmingly held that the COVID-19 pandemic does not give rise to a frustration-of-purpose defense to a commercial lease.  See A/R Retail LLC, 149 N.Y.S.3d at 823 (listing cases).

Abasic's defense of impossibility also fails to excuse its obligations under the Guarantee.  Although Abasic does not directly discuss the defense of impossibility, it suggests that the difficult economic conditions brought on by the pandemic

have made performance impossible or impracticable.  But
"economic hardship, even to the extent of insolvency or
bankruptcy" does not excuse performance under a contract.  407
E. 61st Garage, Inc., 23 N.Y.2d at 281.  New York courts have
therefore also overwhelmingly rejected the impossibility defense
as a means of avoiding obligations under commercial lease
agreements during the COVID-19 pandemic.  See A/R Retail LLC,
149 N.Y.S.3d at 826-27 (listing cases).

Abasic argues that its case is distinguishable due to the
increased uncertainty caused by more recent COVID-19 variants.
It also points to its expert report, which found that foot
traffic near Abasic's planned storefront had declined to such an
extent that its retail business would have been impracticable.
As numerous cases have made clear, however, neither temporary
lockdown orders nor economic hardship excuse obligations under a
commercial lease, and Abasic's expert report provides no
information suggesting any other factual basis for its defenses.

Finally, Abasic's impossibility and frustration of purposes
defenses must fail because the lease agreement expressly
allocates the relevant risk.  Impossibility and frustration of
purpose only provide an excuse when "produced by an
unanticipated event that could not have been foreseen or guarded
against in the contract."  A/R Retail LLC, 149 N.Y.S.3d at 826

(citation omitted).  Here, however, the lease agreement
expressly states that the Owner is not liable "for any failure .
. . to assure the beneficial use of the Premises . . . when such
failure is caused by natural occurrences . . . or any other
condition beyond [Owner's] reasonable control."  Abasic cannot
use the COVID-19 pandemic as an excuse to escape its obligations
under the Guarantee when the underlying lease expressly states
that the landlord would not be responsible for such an event.
Accordingly, summary judgment is granted to Owner with respect
to Abasic's defenses of impossibility and frustration of
purpose.

     C.   Failure of Consideration

     Owner moves for summary judgment on Abasic's defense of
failure of consideration.  Failure of consideration refers a
situation in which "a performance for which the promisor
bargained has not been rendered."  2 Corbin on Contracts § 5.20.
See also In re Estate of Wirth, 5 N.Y.3d 875, 876 (2005).

     Abasic argues that it did not receive its bargained-for
consideration under the contract because it expected to be able
to operate a profitable retail establishment in a well-
trafficked area.  As explained above, however, the lease
agreement did not warrant beneficial use of the leased premises,
and specifically disclaimed any liability for events outside

14

Owner's control.  Abasic presents no facts to suggest that Owner did not deliver the premises, or that the Owner otherwise failed to hold up its end of the bargain.  Accordingly, summary judgment is granted to Owner with respect to Abasic's defense for failure of consideration.

### D.   Other Defenses

Owner moves for summary judgment on Abasic's defense that the case should be dismissed or stayed pending its appeal of the judgment in the adversary proceeding between Owner and NTS.  Abasic does not argue, however, that a case may be dismissed simply because there is a pending appeal in a related action.  Additionally, Abasic's motion to stay the case pending appeal was already denied by this Court's Order of September 23, 2021.  Accordingly, summary judgment is granted to plaintiff on Abasic's defense that the case should be stayed or dismissed pending appeal.

Finally, Owner moves for summary judgment on Abasic's defenses of laches, waiver, and estoppel, and its defense that the complaint fails to state a proper cause of action.  Abasic's acknowledges that its defense for failure to state a claim depends on its argument that the underlying lease is invalid.  As explained above, however, Abasic has not asserted a meritorious defense to the underlying lease.  Additionally,

Abasic has made no argument opposing summary judgment on its defense of laches, waiver, or estoppel.  These defenses are therefore deemed abandoned.  See Kovaco v. Rockbestos-Surprenant Cable Corp., 834 F.3d 128, 143 (2d Cir. 2016).  Accordingly, Owner is entitled to summary judgment on all of Abasic's defenses.

III. Damages

Owner argues that it is entitled to $2,213,009.82 in damages, as well as attorney's fees.  In support of this sum, Owner has submitted the lease agreement, which provides for base rent payments of $116,666.67 monthly in the first year and $120,166.67 monthly in the second year, in addition to payments for certain operating expenses, one twelfth of the Owner's tax payments, a 5% surcharge on rent overdue for more than five days, and a 15% surcharge for each month NTS was not conducting business, among various other payments.  Owner has also submitted a rent ledger itemizing these costs, and subtracting offsets from NTS's security deposit, and rent collected from other tenants.  The items in the ledger sum to $2,213,009.82.

Abasic argues that it is not liable for rent waived under the Free Base Rental Period.  Under the lease, NTS was not required to pay base rent for the first 60 days of its occupancy.  This period was then extended in bankruptcy

16

proceedings.  The lease, however, provides that rent waived
during the Free Base Rental Period becomes immediately payable
when NTS defaults.  This rent is therefore appropriately
included in the ledger.

Abasic also objects to the inclusion in the ledger of
$70,964.52 in legal fees spent on the NTS's default and
bankruptcy case.  Abasic argues that legal fees cannot be
awarded under the Guarantee for proceedings in which it or NTS
is the prevailing party, and that the prevailing party has not
yet been determined for the adversary proceeding, which is still
on appeal.  The lease agreement, however, entitles Owner to all
legal fees arising out of its enforcement of the lease or NTS's
default, regardless of which party prevails.  And because Abasic
has guaranteed NTS's obligations under the lease, it is liable
for this amount as well.

## Conclusion

The defendant's October 29, 2021 motion for summary
judgment on its defense of release is denied.  The plaintiff's
November 12, 2021 cross motion for summary judgment on the
defense of release is granted.  The plaintiff's January 21, 2022
motions to amend its complaint and for summary judgment on its
remaining claims and the defendant's remaining defenses are

granted.  Defendant is liable to the plaintiff for

$2,213,009.82, as well as attorney's fees and legal costs.


Dated:    New York, New York
          March 8, 2022

                              _____
                                       DENISE COTE
                              United States District Judge