# EXHIBIT "2"

# Abasic Guaranty

## GUARANTY

This GUARANTY dated as of January 17, 2020 (this "Guaranty"), is made and entered into by ABASIC, S.L., a Spanish private limited company ("Guarantor"), whose registered address is Passeig del Mare Nostrum 15, 08039, Barcelona, Spain, for the benefit of 605 FIFTH PROPERTY OWNER, LLC, a New York limited liability company ("Landlord"), whose address is c/o Optimum Properties, 924 Bergen Avenue, Suite 513, Jersey City, New Jersey 07306.

RECITALS:

A. Pursuant to that certain Store Lease dated as of the date hereof (the "Lease"), between Landlord and NTS W. USA, CORP., a Delaware corporation ("Tenant"), Landlord has agreed to lease to Tenant the premises described therein (the "Premises"). Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Lease.

B. Guarantor directly or indirectly owns all of the capital stock of Tenant.

C. Guarantor expects to benefit if Tenant enters into the Lease with Landlord, and desires that Landlord enter into the Lease with Tenant.

D. Landlord would not enter into the Lease but for Guarantor's agreement to enter into this Guaranty and Guarantor is executing and delivering this Guaranty to induce Landlord to enter into the Lease.

**NOW, THEREFORE**, in exchange for good, adequate, and valuable consideration, the receipt of which Guarantor acknowledges, and to induce Landlord to enter into the Lease, Guarantor agrees as follows:

Section 1. *Definitions.* For purposes of this Guaranty, the following terms shall be defined as set forth below.

1.01. "GAAP" means generally accepted accounting principles, consistently applied.

1.02. "Guarantied Obligations" means all of Tenant's obligations under the Lease, including without limitation Tenant's obligation to pay Rent (as defined in the Lease).

1.03. "Guarantor Litigation" means any litigation, arbitration, investigation, or administrative proceeding of or before any court, arbitrator, or governmental authority, bureau or agency that relates to or affects this Guaranty or any asset(s) or property(ies) of Guarantor, including any litigation between or among Guarantor.

1.04. "Insolvency Proceeding" means any insolvency, bankruptcy, reorganization, liquidation, or like proceeding, or other statute or body of law relating to creditors' rights, whether brought under state, federal, or foreign law.

1.05. "Legal Costs" means all reasonable costs and expenses incurred by Landlord in any Proceeding or in obtaining legal advice and assistance in connection with any Proceeding, any Guarantor Litigation, or any default by Tenant under the Lease or by any Guarantor under this Guaranty (including any breach of a representation or warranty contained in this Guaranty), including reasonable attorneys' fees, disbursements, and other charges incurred by Landlord's attorneys, court costs and expenses, and charges for the services of paralegals, law clerks, and all other personnel whose services are charged to Landlord in connection with Landlord's receipt of legal services; provided, however, that "Legal Costs" shall not include any such costs in connection with a Proceeding or Guarantor Litigation to the extent that Tenant and/or Guarantor are the prevailing party therein.



1.06. "Person" means an individual, partnership, corporation, limited liability company, joint stock company, trust or unincorporated organization or a governmental agency or political subdivision thereof.

1.07. "Proceeding" means any action, suit, arbitration, or other proceeding arising out of, or relating to the interpretation or enforcement of, this Guaranty or the Lease, including without limitation (a) an Insolvency Proceeding; (b) any proceeding commenced by Tenant or Guarantor against Landlord; and (c) any Guarantor Litigation.

1.08. "State" means the State of New York.

Section 2. *Absolute Guaranty of all Guaranteed Obligations.* Guarantor unconditionally and irrevocably guarantees Tenant's prompt and complete payment, observance, fulfillment, and performance of all Guaranteed Obligations. Guarantor shall be personally liable for, and personally obligated to pay and perform, all Guaranteed Obligations

Section 3. *Nature and Scope of Liability.* Guarantor's liability under this Guaranty is primary and not secondary. Guarantor's liability under this Guaranty shall be in the full amount of all Guaranteed Obligations, including any interest, costs, and fees (including Legal Costs) payable by Tenant under the Lease, including any of the foregoing that would have accrued under the Lease but for any Insolvency Proceeding.

Section 4. *Changes in the Lease.* Without notice to, or consent by, Guarantor, and in Landlord's sole and absolute discretion and without prejudice to Landlord or in any way limiting or reducing Guarantor's liability under this Guaranty, Landlord may: (a) grant extensions of time, renewals or other indulgences or modifications to Tenant under the Lease, (b) change, amend, or modify the Lease, (c) discharge or release any party or parties liable under the Lease, (d) accept or make compositions or other arrangements or file or refrain from filing a claim in any Insolvency Proceeding, and (e) otherwise deal with Tenant and any other party related to the Lease as Landlord may determine in its sole and absolute discretion. Without limiting the generality of the foregoing, Guarantor's liability under this Guaranty shall continue even if Landlord alters any obligations under the Lease in any respect or Landlord's or Guarantor's remedies or rights against Tenant are in any way impaired or suspended without Guarantor's consent. If Landlord performs any of the actions described in this paragraph, then Guarantor's liability shall continue in full force and effect even if Landlord's actions impair, diminish or eliminate Guarantor's subrogation, contribution, or reimbursement rights (if any) against Tenant or otherwise adversely affect Guarantor or expand Guarantor's liability hereunder.

Section 5. *Nature of Guaranty.* Guarantor's liability under this Guaranty is a guaranty of payment and performance of the Guaranteed Obligations, and is not a guaranty of collection or collectability. Guarantor's liability under this Guaranty is not conditioned or contingent upon the genuineness, validity, regularity or enforceability of the Lease. Guarantor's liability under this Guaranty is a continuing, absolute, and unconditional obligation under any and all circumstances whatsoever (except as expressly stated, if at all, in this Guaranty), without regard to the genuineness, validity, regularity or enforceability of the Lease. Guarantor acknowledges that Guarantor is fully obligated under this Guaranty even if Tenant had no liability at the time of execution of the Lease or later ceases to be liable under the Lease, whether pursuant to Insolvency Proceedings or otherwise. Guarantor shall not be entitled to claim, and irrevocably covenants not to raise or assert, any defense, counterclaim, set-off or deduction against the Guaranteed Obligations that would or might be available to Tenant, other than actual payment and performance of all Guaranteed Obligations in full in accordance with their terms. Guarantor waives any right to compel Landlord to proceed first against Tenant before proceeding against Guarantor. Guarantor agrees that if any of the Guaranteed Obligations are or become void or unenforceable (because of inadequate



consideration, lack of capacity, Insolvency Proceedings, or for any other reason), then Guarantor's liability under this Guaranty shall continue in full force with respect to all Guaranteed Obligations as if they were and continued to be legally enforceable, all in accordance with their terms before giving effect to the Insolvency Proceedings. Guarantor also recognizes and acknowledges that its liability under this Guaranty may be more extensive in amount and more burdensome than that of Tenant. Guarantor waives any defense that might otherwise be available to Guarantor based on the proposition that a guarantor's liability cannot exceed the liability of the principal. Guarantor intends to be fully liable under the Guaranteed Obligations regardless of the scope of Tenant's liability thereunder. Guarantor waives any defenses to this Guaranty arising or purportedly arising from any waiver of or delay in enforcing the terms of the Lease by Landlord or other failure or delay of Landlord to require full compliance with the Lease. Guarantor's liability under this Guaranty shall continue until all sums due under the Lease have been paid in full and all other performance required under the Lease has been rendered in full, except as expressly provided otherwise (if at all) in this Guaranty.

Section 6.  *Waivers of Rights and Defenses.*  Guarantor waives any right to require Landlord to (a) proceed against Tenant, or (b) pursue any other right or remedy for Guarantor's benefit. Guarantor agrees that Landlord may proceed against Guarantor with respect to the Guaranteed Obligations without taking any actions against Tenant. Guarantor agrees that Landlord may unqualifiedly exercise in its sole discretion (or may waive or release, intentionally or unintentionally) any or all rights and remedies available to it against Tenant without impairing Landlord's rights and remedies in enforcing this Guaranty, under which Guarantor's liabilities shall remain independent and unconditional. Guarantor agrees and acknowledges that Landlord's exercise (or waiver or release) of certain of such rights or remedies may affect or eliminate Guarantor's right of subrogation or recovery against Tenant (if any) and that Guarantor may incur a partially or totally non-reimbursable liability in performing under this Guaranty. Guarantor has assumed the risk of any such loss of subrogation rights, even if caused by Landlord's acts or omissions. If Landlord's enforcement of rights and remedies, or the manner thereof, limits or precludes Guarantor from exercising any right of subrogation that might otherwise exist, then the foregoing shall not in any way limit Landlord's rights to enforce this Guaranty.

Section 7.  *Additional Waivers.*  Guarantor waives diligence and all demands, protests, presentments and notices of every kind or nature, including notices of protest, dishonor, nonpayment, acceptance of this Guaranty and the creation, renewal, extension, modification or accrual of any of the Guaranteed Obligations. Guarantor further waives the right to plead any and all statutes of limitations as a defense to Guarantor's liability under this Guaranty or the enforcement of this Guaranty. No failure or delay on Landlord's part in exercising any power, right or privilege under this Guaranty shall impair or waive any such power, right or privilege.

Section 8.  *No Duty to Prove Loss.*  To the extent that Guarantor at any time incurs any liability under this Guaranty, Guarantor shall immediately pay Landlord (to be applied on account of the Guaranteed Obligations) the amount provided for in this Guaranty, without any requirement that Landlord demonstrate that Landlord has currently suffered any loss or that Landlord has otherwise exercised (to any degree) or exhausted any of Landlord's rights or remedies with respect to Tenant.

Section 9.  *Full Knowledge.*  Guarantor acknowledges, represents, and warrants that Guarantor has had a full and adequate opportunity to review the Lease and all underlying facts relating to such transaction. Guarantor represents and warrants that Guarantor fully understands: (a) the remedies Landlord may pursue against Tenant and/or Guarantor in the event of a default under the Lease, and (b) Tenant's financial condition and ability to perform under the Lease. Guarantor agrees to keep itself fully informed regarding all aspects of the foregoing and the performance of Tenant's obligations to Landlord. Landlord has no duty, whether now or in the future, to disclose to Guarantor any information pertaining to Tenant.



Section 10.  *Representations and Warranties.*  Guarantor acknowledges, represents, and warrants as follows:

10.01. <u>Authority and Execution</u>. This Guaranty has been duly authorized, executed, and delivered by Guarantor, and is fully valid, binding, and enforceable against Guarantor, in accordance with its terms, subject to the effect of bankruptcy, insolvency, reorganization, moratorium or other similar laws now and hereafter in effect relating to or affecting the rights and remedies of creditors and the effect of general principles of equity, whether enforcement is considered in a proceeding or equity or at law.

10.02. <u>No Conflict</u>. The execution, delivery, and performance of this Guaranty will not violate any provision of any law, regulation, judgment, order, decree, determination, or award of any court, arbitrator or governmental authority, or of any mortgage, indenture, loan, or security agreement, lease, contract or other agreement, instrument or undertaking to which Guarantor is a party, in any material respect, or that purports to bind Guarantor or any of Guarantor's property or assets.

10.03. <u>No Third Party Consent Required</u>. No consent of any Person (including creditors or partners, members, stockholders, or other owners of Guarantor) is required in connection with Guarantor's execution of this Guaranty or performance of Guarantor's obligations under this Guaranty. Guarantor's execution of, and obligations under, this Guaranty are not contingent upon any consent, license, permit, approval, or authorization of, exemption by, notice or report to, or registration, filing, or declaration with, any governmental authority, bureau, or agency, whether local, state, federal, or foreign.

10.04. <u>No Representations by Landlord</u>. Guarantor delivers this Guaranty based solely upon Guarantor's own independent investigation and based in no part upon any representation, statement, or assurance by Landlord.

Section 11.  *Reimbursement and Subrogation Rights; Application of Payments.*  Except to the extent that Landlord notifies Guarantor to the contrary in writing from time to time:

11.01. <u>General Deferral of Reimbursement</u>. Guarantor waives any right to be reimbursed by Tenant for any payment(s) made by Guarantor on account of the Guarantied Obligations, unless and until all amounts under the Lease have been paid in full and all periods within which such payments may be set aside or invalidated have expired. Guarantor acknowledges that Guarantor has received adequate consideration for execution of this Guaranty by virtue of Landlord's entering into the Lease (which benefits Guarantor, as an indirect beneficial owner of Tenant) and Guarantor does not require or expect, and is not entitled to, any other right of reimbursement against Tenant as consideration for this Guaranty.

11.02. <u>Deferral of Subrogation and Contribution</u>. Guarantor agrees it shall have no right of subrogation against Tenant or Landlord unless and until in Landlord's reasonable determination: (a) such right of subrogation does not violate (or otherwise produce any result adverse to Landlord under) any applicable law, including any bankruptcy or insolvency law; (b) all amounts due under the Lease have been paid in full and all other performance required under the Lease has been rendered in full to Landlord; and (c) all periods within which such payment and performance may be set aside or invalidated have expired (such deferral of Guarantor's subrogation and contribution rights, the "<u>Subrogation Deferral</u>"). If any amounts shall be paid to Guarantor in violation of subsections (a) or (b) of this Section 11.02, such amount shall be held in trust for the benefit of Landlord and shall forthwith be paid to Landlord to be credited and applied to the payment of the Guarantied Obligations, whether matured or unmatured; provided, however, nothing contained herein shall prohibit Tenant from making a dividend to Guarantor at any time. Immediately upon the occurrence of such payment by Guarantor to Landlord, any and all duties owed by Guarantor to Landlord with respect to Guarantor's holding of such amounts for Landlord shall be satisfied and discharged.



11.03.  Application of Payments. All amounts received by Landlord for application in payment or reduction of the Guarantied Obligations may be applied to the payment or reduction of the Guarantied Obligations by Landlord in such manner, in such amounts and at such times as Landlord may elect in its sole discretion.

Section 12.   *Claims in Insolvency Proceeding.* Guarantor shall not file any claim in any Insolvency Proceeding affecting Tenant unless Guarantor simultaneously assigns and transfers such claim to Landlord, without additional consideration, pursuant to documentation fully satisfactory to Landlord. Guarantor shall automatically be deemed to have assigned and transferred such claim to Landlord whether or not Guarantor executes documentation to such effect. By executing this Guaranty, Guarantor hereby authorizes Landlord (and grants Landlord a power of attorney coupled with an interest, and hence irrevocable) to execute and file such assignment and transfer documentation on Guarantor's behalf, which power of attorney may only be exercised by Landlord following the occurrence and continuance of an Event of Default (as defined in the Lease). Landlord shall have the sole right to vote, receive distributions, and exercise all other rights with respect to any such claim, provided, however, that if and when the Guarantied Obligations have been paid in full Landlord shall release to Guarantor any further payments received on account of any such claim.

Section 13.   *Landlord's Disgorgement of Payments.* Upon payment of all or any portion of the Guarantied Obligations, Guarantor's obligations under this Guaranty shall continue and remain in full force and effect if all or any part of such payment is, pursuant to any Insolvency Proceeding or otherwise, avoided or recovered directly or indirectly from Landlord as a preference, fraudulent transfer, or otherwise irrespective of any notice of revocation given by Guarantor prior to such avoidance or recovery. Guarantor's liability under this Guaranty shall continue until all periods have expired within which Landlord could (on account of Insolvency Proceedings, whether or not then pending, affecting Tenant, or any other Person) be required to return, repay, or disgorge any amount paid at any time on account of the Guarantied Obligations.

Section 14.   *Consent to Jurisdiction.* Guarantor agrees that any Proceeding to enforce this Guaranty may be brought in any state or federal court located in the State, as Landlord may select from time to time. By executing this Guaranty, Guarantor irrevocably accepts and submits to the nonexclusive personal jurisdiction of each of the aforesaid courts, generally and unconditionally with respect to any such Proceeding. Guarantor agrees not to assert any basis for transferring jurisdiction of any such proceeding to another court.

Section 15.   *Merger; No Conditions; Amendments.* This Guaranty and documents referred to herein contain the entire agreement among the parties with respect to the matters set forth in this Guaranty. This Guaranty supersedes all prior agreements among the parties with respect to the matters set forth in this Guaranty. No course of prior dealings among the parties, no usage of trade, and no parol or extrinsic evidence of any nature shall be used to supplement, modify, or vary any terms of this Guaranty. This Guaranty is unconditional. There are no unsatisfied conditions to the full effectiveness of this Guaranty. No terms or provisions of this Guaranty may be changed, waived, revoked, or amended without Landlord's written agreement. If any provision of this Guaranty is determined to be unenforceable, then all other provisions of this Guaranty shall remain fully effective.

Section 16.   *Governing Law; Enforcement.* This Guaranty shall be governed solely by New York State internal law (disregarding such state's law on conflict of laws). Guarantor acknowledges that this Guaranty is an "instrument for the payment of money only," within the meaning of New York Civil Practice Law and Rules Section 3213. In the event of any Proceeding between Tenant or Guarantor and Landlord, including any Proceeding in which Landlord enforces or attempts to enforce this Guaranty or the



Lease against Tenant or Guarantor, or in the event of any Guarantor Litigation, Guarantor shall reimburse Landlord for all Legal Costs of such Proceeding.

Section 17.   *Further Assurances.*  Guarantor shall execute and deliver such further documents, and perform such further acts, as Landlord may reasonably request to achieve the intent of the parties as expressed in this Guaranty, provided in each case that any such documentation is consistent with this Guaranty and with the Lease.

Section 18.   *Counterparts.*  This Guaranty may be executed in counterparts.

Section 19.   *WAIVER OF TRIAL BY JURY.*  GUARANTOR AND LANDLORD WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING FROM OR RELATING TO THIS GUARANTY OR THE LEASE OR ANY OBLIGATION(S) OF GUARANTOR AND LANDLORD HEREUNDER OR UNDER THE LEASE.

Section 20.   *Financial Statements.*  Upon request from Landlord, Guarantor shall deliver to Landlord the consolidated financial statement of Guarantor and Tenant and their respective consolidated subsidiaries as at the end of the then prior fiscal year. Such financial statement shall be provided by Guarantor to Landlord within thirty (30) days after request therefor if the same is then available, or if not then available, then (i) Guarantor shall so notify Landlord and provide a good faith estimate as to when the same would be available; and (ii) Guarantor shall provide such financial statement as soon as available and in any event prior to July 1 of the then current year. By way of example, if Landlord makes a request for the financial statement for the 2020 fiscal year on May 1, 2021, and such financial statement is not then available, Guarantor shall deliver such financial statement as soon as available but in no event later than July 1, 2021. All such consolidated financial statements of Guarantor and Tenant and their respective consolidated subsidiaries shall be in the English language and prepared in accordance with GAAP, and shall include the consolidated balance sheets and related consolidated statements of income and retained earnings and of cash flows for Guarantor and Tenant and their respective consolidated subsidiaries for such year, setting forth in each case in comparative form the figures for the previous fiscal year, accompanied by an opinion thereon of independent certified public accountants of recognized national standing, which opinion shall not be qualified as to scope of audit or going concern, and shall state that such annual consolidated financial statements fairly present the consolidated financial condition and results of operations of Guarantor and Tenant and their respective consolidated subsidiaries as at the end of, and for, such fiscal year in accordance with GAAP.

Section 21.   *Miscellaneous.*

21.01.   Assignability.  Landlord may assign this Guaranty (in whole or in part) together with the Lease, without in any way affecting Guarantor's or Tenant's liability. Upon request in connection with any such assignment Guarantor shall deliver such documentation as Landlord shall reasonably request. This Guaranty shall benefit Landlord and its successors and assigns and shall bind Guarantor and its successors, and assigns.

21.02.   Notices.  Any and all notices required or which either party herein may desire to give to the other shall be made in writing and shall be given by certified or registered mail, postage prepaid, return receipt requested, or by a nationally recognized overnight courier, and shall be deemed to be given on the date such notice is delivered or first refused, and shall be delivered to the address set forth in the opening paragraph of this Guaranty. Either party may designate a different address or addresses for communications intended for it by written notice to the other party.



21.03. <u>Interpretation</u>. The word "include" and its variants shall be interpreted in each case as if followed by the words "without limitation."

Section 22.   *No Third-Party Beneficiaries*. This Guaranty is executed and delivered for the benefit of Landlord and its heirs, successors, and assigns, and is not intended to benefit any third party.

Section 23.   *Agent for Service of Process*. On or prior to January 24, 2020, Guarantor shall (i) appoint and engage Corporation Service Company ("<u>Agent</u>"), having an address at 80 State Street, Albany, New York 12207-2543 or such other address in the City of New York as its agent for service of process; and (ii) cause Agent to confirm its acceptance of such appointment to Landlord. Upon its effectiveness, the foregoing appointment shall be deemed to be coupled with an interest and shall be irrevocable. If Agent ceases to exist and has no successors, then Guarantor shall promptly execute similar substitute documents with a substitute agent as reasonably requested by Landlord.

Section 24.   *Non-Disparagement and Confidentiality*.

24.01. Guarantor shall not, and shall not permit any Tenant Party to, directly or indirectly make any oral or written negative statement (including without limitation on any social media website (i.e., Yelp, Twitter, Facebook, Instagram, etc.), other website and/or other medium) concerning or relating to the Premises, the Building, the Property and/or Landlord and/or any other Indemnitee. Guarantor agrees that the foregoing provision is a material term of this Guaranty, the absence of which would have resulted in Landlord refusing to enter into the Lease and accept this Guaranty from Guarantor;

24.02. Guarantor shall, and shall cause its affiliates to, keep the Lease, this Guaranty and the terms of each of the foregoing confidential and not disclose any of the foregoing to any person or entity for any reason, except that Guarantor may disclose this Guaranty and/or the terms thereof (i) to the extent required by Applicable Law; and (ii) to its directors, officers, employees, legal and financial advisors, and other professionals and consultants who have a need to know such information in order to perform Guarantor's obligations under this Guaranty; provided that, in each case, Guarantor shall have informed such directors, officers, employees, legal and financial advisors, and other professionals and consultants of the confidential nature of such information and shall be directed by Guarantor to treat such information confidentially and Guarantor shall be responsible for any failures of such persons or entities to keep such information confidential.

24.03. Guarantor agrees that (i) if a breach by Guarantor of its obligations under this Section 24 were to occur, it would be difficult to determine actual damages; (ii) based on what Landlord and Guarantor presently know, they agree that an amount equal to one years' then current Base Rent and Additional Rent is a reasonable estimate of the damages that would accrue if a breach by Guarantor of its obligations under this Section 24 were to occur; and (iii) the foregoing amount of liquidated damages is fair and reasonable and would not constitute a penalty to Guarantor.

Section 25.   CERTAIN ACKNOWLEDGMENTS BY GUARANTOR. GUARANTOR ACKNOWLEDGES THAT BEFORE EXECUTING THIS GUARANTY: (A) GUARANTOR HAS HAD THE OPPORTUNITY TO REVIEW IT WITH AN ATTORNEY OF GUARANTOR'S CHOICE; (B) LANDLORD HAS RECOMMENDED TO GUARANTOR THAT GUARANTOR OBTAIN SEPARATE COUNSEL, INDEPENDENT OF TENANT'S COUNSEL, REGARDING THIS GUARANTY; AND (C) GUARANTOR HAS CAREFULLY READ THIS GUARANTY AND UNDERSTOOD THE MEANING AND EFFECT OF ITS TERMS, INCLUDING ALL WAIVERS AND ACKNOWLEDGMENTS CONTAINED IN THIS GUARANTY AND THE FULL EFFECT OF SUCH WAIVERS AND THE SCOPE OF GUARANTOR'S OBLIGATIONS UNDER THIS GUARANTY.



Section 26.   *Legal Opinion.* On or prior to January 24, 2020, Guarantor shall deliver to Landlord a legal opinion in the English language and in a form acceptable to Landlord from a reputable Spanish law firm acceptable to Landlord which shall state that (i) Guarantor is duly organized in Spain; (ii) Guarantor has the power and authority to enter into this Guaranty; (iii) Guarantor has duly authorized the execution and delivery of this Guaranty; (iv) Guarantor has duly executed and delivered this Guaranty; (v) the execution and delivery of this Guaranty by Guarantor does not contravene its organizational documents or the laws of Spain; and (vi) a court in Spain will enforce a judgment of a New York court against Guarantor. Guarantor shall cause draft(s) of such legal opinion to be sent to Landlord in advance of such date so as to allow Landlord sufficient time for review and comment.

Section 27.   *Default.* Guarantor shall be in default hereunder if it fails to pay any amounts due hereunder as and when the same are due or if any of them fail to perform any other covenant or obligations hereunder and such failure continues for more than ten (10) days after receipt of notice or knowledge thereof with respect to any monetary obligations and more than thirty (30) days after receipt of notice or knowledge thereof with respect to any non-monetary obligations.

*[The remainder of this page has been intentionally left blank]*

IN WITNESS WHEREOF, Guarantor has duly executed and delivered this Guaranty as of the day and year first above written.

**GUARANTOR:**

ABASIC, S.L.,
a Spanish private limited company

By: _____
Name: Alberto Olinaga Cebrián
Title: Chief Executive Officer

ABASIC, S. L.
N.I.F. B-63054068
Passeig del Mare Nostrum, 15
08039-BARCELONA